UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
VAS DEV ANAND,

                              Plaintiff,          10-CV-5142 (SJF)(WDW)

        -against-

NEW YORK STATE DEPARTMENT OF
TAXATION AND FINANCE, ANTHONY VANO,
in his official capacity and individually, THOMAS
VARGHESE, in his official capacity and individually,
GREGORY WILEY, in his official capacity and
individually, NONIE MANION (a.k.a. HONORA
MANION), in her official capacity and individually,
JOSEPH MACCHIO, in his official capacity and
individually, ANNMARIE DWYER, in her official
capacity and individually, DENNIS GILLOOLY,
in his official capacity and individually,

                              Defendants.
-----------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JUN 18 2012   ★

**LONG ISLAND OFFICE**

FEUERSTEIN, District Judge:


        On November 5, 2010, pro se plaintiff Vas Anand ("plaintiff") commenced this action

against defendant New York State Department of Taxation and Finance, alleging, inter alia,

employment discrimination in violation of various federal statutes. [Docket Entry No. 1]. On

May 2, 2011, after the Department had served its motion to dismiss, plaintiff filed an amended

complaint, which added defendants Anthony Vano, Thomas Varghese, Gregory Wiley, Nonie

Manion (a.k.a. Honora Manion), Joseph Macchio, Annmarie Dwyer, and Dennis Gillooly, in

their official and individual capacities (collectively, the "individual defendants").

        Before the Court is defendants' motion to dismiss the amended complaint pursuant to

1

Federal Rule of Civil Procedure 12(b) or, in the alternative, for a more definite statement pursuant to Rule 12(e). For the reasons that follow, defendants' motion is granted in part and denied in part.

I.    Introduction

    A.    Factual Background[1]

Plaintiff identifies himself as a "disabled east Indian male" who has been employed by the New York State Department of Taxation and Finance (the "Department") since 1997. Amended Complaint ("Am. Compl.") [Docket Entry No. 9] at ¶ 7. Before taking a position with the Department, plaintiff worked as a controller in various companies both in India and the United States. See id. at ¶ 8. The individual defendants are alleged to be current and former employees of the Department. At all times relevant to this action, Vano, Varghese, Macchio, Gillooly, and Wiley were employed as tax auditors or audit administrators, Dwyer was employed as "Program Manager," and Manion was employed as Director of Audits. Id. at ¶¶ 10-16.

Though unclear, plaintiff appears to challenge: (1) the Department's failure to promote plaintiff; and (2) various allegedly retaliatory actions allegedly taken against plaintiff after he filed a discrimination complaint and provided testimony at an administrative proceeding on behalf of another employee.

Plaintiff alleges that, in May 2007, he learned of a Department initiative to promote tax auditors. Id. at ¶ 24. According to the amended complaint, Manion, the Director of Audits,

---

[1] For the purposes of this motion, the allegations in the amended complaint are taken as true. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

"stated that the promotions for tax auditors were meant to go to 'younger' employees." Id. at ¶ 25. Plaintiff applied, and was interviewed, for a promotion from the position of "Sales Tax Auditor 1" to "Sales Tax Auditor 2." Id. at ¶ 26. Although he was not awarded the promotion, plaintiff was informed by defendants Vano and Dwyer that he would "get another shot in about 9 months." Id. at ¶ 27. Plaintiff was subsequently informed by an unidentified individual that he would not be promoted because his experience auditing "cash" businesses was not highly valued by the Department. Id. at ¶ 34. At or around this time, plaintiff was seventy-three (73) years old. Id. at ¶ 33. Both individuals who received the promotions were under the age of forty (40). Id. Plaintiff alleges that these individuals "had the least service with the Department and also brought in the least tax revenue . . . for the Department." Id. at ¶ 38.

In October and November 2007, plaintiff was given several performance evaluations that he claims contained "deliberate inaccurate statements" and comments designed "to paint [him] as a mediocre employee." Id. at ¶¶ 28-29. Plaintiff stresses his record of achievements at the Department and the assistance he provided to less experienced employees. See, e.g., id. at ¶¶ 29, 32, 36, 37, 39, 40, 43, 44.

On or about January 10, 2008, plaintiff filed a charge of discrimination with the New York State Division of Human Rights and U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of his race, color, sex, national origin, age, and disability. [Docket Entry No. 16-2]. In brief, the charge alleged that plaintiff was denied the promotion for which he applied, even though he had a record of performing his job independently and his performance reviews had been "satisfactory." Plaintiff alleged that the employees who had been selected for promotion were younger and less experienced than he was.

3

Id.

The circumstances surrounding the next series of incidents are not entirely clear. Plaintiff alleges that, in early 2009, received a subpoena to testify on behalf another Department employee in a proceeding before the New York State Industrial Board of Appeals, that he was "discouraged" from testifying by "Tax Department management" and that "[d]efendants made several strong-arm attempts to interfere with Plaintiff's testimony," that he did testify, but was placed on unpaid administrative leave "immediately" after doing so, and that the Department filed "fake charges of harassment" against him as "punish[ment] . . . for speaking out and refusing to be discriminated against." Am. Compl. at ¶¶ 45, 55, 56, 58.

According to documents filed by the defendants, plaintiff was suspended on or about August 17, 2009, due to allegations that he had acted inappropriately toward several of his female colleagues, including that he had made unwanted physical contact with them. [Docket Entry No. 16-5].[2] In a determination dated October 24, 2010, an arbitrator found plaintiff guilty of the majority of the charges, but determined that plaintiff should be returned to his position after satisfying certain preconditions. Id. Plaintiff claims that defendants "harass[ed]" him once he returned to work by instructing him to take vacation and by informing him that "mistakes were made in his vacation day calculations." Am. Compl. at ¶ 51. He also claims that he was reassigned from the Department's Nassau County District Office to the Queens District Office for the purpose of "embarrass[ing]" him. Id. at ¶ 49.

---

[2] On a motion to dismiss, the Court may consider documents outside the pleadings when they are deemed to be "integral" to the complaint. See Subaru Distribs. Corp v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). The Court finds that the arbitrator's decision is "integral" to the complaint because it elucidates the nature of the allegations and disciplinary proceedings against plaintiff.

The EEOC issued a "right to sue" letter on August 5, 2010. [Docket Entry No. 9].

B.    The Instant Action

Plaintiff commenced this action on November 5, 2010. On May 2, 2011, after defendants had served a motion to dismiss, plaintiff filed an amended complaint. Defendants once again moved to dismiss.[3]

The amended complaint asserts the following twelve (12) causes of action: (1) national origin discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) national origin and disability discrimination in violation New York Executive Law §§ 296(1)(a) and 296(6) ("New York Human Rights Law"); (3) retaliation in violation of Title VII; (4) retaliation in violation of New York Human Rights Law § 296(7); (5) denial of equal protection under the Fourteenth Amendment of the United States Constitution; (6) denial of equal protection under the New York State Constitution; (7) retaliation for engaging in protected speech, in violation of the First Amendment of the United States Constitution and Article 1, Section 8 of the New York State Constitution; (8) denial of due process under the Fourteenth Amendment of the United States Constitution; (9) "waste [of] state resources including . . . state work time and salaries of Public Officers"; (10) conspiracy to interfere with plaintiff's civil rights, in violation of 42 U.S.C. § 1985; (11) disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 et seq. ("ADA"); (12) age discrimination in violation of the Age

_____

[3] The Court notes that plaintiff's sur-reply [Docket Entry No. 19] is impermissible, and will not be considered in connection with this motion. See Court's Individual Rule 4(F).

Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA").  Am. Compl. at ¶¶ 69-120.[4]

II.      Discussion

    A.      Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  "A pleading that offers 'labels and conclusions' or 'a 'formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

In deciding a motion pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  "[T]he tenet that a court must

---

[4] Defendant does not specifically mention the ADEA, but the Court interprets his age discrimination claim to be brought pursuant to that statute.  See generally Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (court must construe pro se plaintiff's pleadings liberally, and interpret them to raise the strongest arguments they suggest).

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. "While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." Matson, 631 F.3d at 63 (internal quotation marks and citation omitted).

B.    Analysis

1.    Claims Against the New York State Department of Taxation and Finance

"The Eleventh Amendment states that '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (quoting U.S. Const. amend. XI). "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity, and it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without the sovereign's consent." Id. (internal quotation marks, citations, and bracketing omitted). "Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens, as well as state court actions against state governments." Id. (internal citations omitted). "[A]s a general rule, state governments may not

7

be sued in federal court unless they have waived their Eleventh Amendment immunity . . . ." Id. (citing Lapides v. Bd. of Regents, 535 U.S. 613, 618-19, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)). "This bar exists where the relief sought is legal or equitable." Dube v. State Univ. of New York, 900 F.2d 587, 594 (2d Cir. 1990) (quoting Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986)).

"The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." Woods, 466 F.3d at 236 (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)). "The Department of Taxation is a state agency entitled to Eleventh Amendment immunity." Miller v. State of New York Div. of Tax Appeals, 480 F.Supp.2d 574, 581 (E.D.N.Y. 2007) (citing cases); see also Fetcho v. New York State Dept. of Taxation and Finance, No. 10-CV-3881, 2012 WL 294396, at *3 (E.D.N.Y. Jan. 27, 2012); Smith v. New York State Dept. of Taxation and Finance, No. 01-CV-1776, 2002 WL 1150013, at *3 (E.D.N.Y. May 17, 2002). Accordingly, the majority of plaintiff's claims against the Department are barred by the principle of sovereign immunity. See, e.g., Sank v. City University of New York, No. 10 Civ. 4975, 2011 WL 5120668, at *6 (S.D.N.Y. Oct. 28, 2011) ("The State of New York has not waived its immunity with respect to Section 1983 claims . . . and Congress did not intend to abrogate the States' sovereign immunity with respect to such claims."); Keitt v. New York City, No. 09 Civ. 8508, 2011 WL 4526147, at *3 (S.D.N.Y. Sept. 29, 2011) (plaintiff's "Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the 11th Amendment"); Clark v. Dominique, 798 F.Supp.2d 390, 405 (N.D.N.Y. 2011) (claims under the New York State Constitution "subject to dismissal under New York State's sovereign

8

immunity"); <u>Lambert v. New York State Office of Mental Health</u>, No. 97-CV-1347, 2000 WL 574193, at *7 (E.D.N.Y. Apr. 24, 2000) ("As district courts in this circuit have uniformly found, the New York Human Rights Law includes no waiver of the state's immunity to suit in federal court.").

In opposition to defendants' motion, plaintiff has submitted a bill passed by the New York State Assembly in May 2011, which would waive the state's immunity with respect to claims under, <u>inter alia</u>, the ADA and ADEA. [Docket Entry No. 14]. Plaintiff does not, however, support his claim that this bill was actually enacted into law, and there is no evidence that the state has waived its immunity or consented to being sued under the ADA or ADEA. <u>See</u> <u>Skalafuris v. City of New York</u>, 444 Fed. Appx. 466, 468 (2d Cir. 2011) ("[T]he States' sovereign immunity in the area of age discrimination remains intact.").[5] Accordingly, the Court lacks jurisdiction over these claims against the Department. Plaintiff's Section 1983, Section 1985, ADA, ADEA, and state claims are all dismissed as they relate to that agency.

Title VII, however, abrogates the states' Eleventh Amendment immunity. <u>Fitzpatrick v.</u> <u>Bitzer</u>, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976); <u>see also</u> <u>Davis v. State</u> <u>Univ. of New York</u>, 802 F.2d 638, 640 n. 1 (2d Cir. 1986) ("[A] state and its agencies have been subject to suit under Title VII since 1972 and have no Eleventh Amendment immunity."); <u>Trivedi v. New York State Unified Court Sys. Office of Court Admin.</u>, 818 F.Supp.2d 712, 722 (S.D.N.Y. 2011) ("Congress has abrogated sovereign immunity with respect to race

---

[5] Moreover, plaintiff has not alleged that he suffers from a "disability," which is fundamental to any claim of discrimination under the ADA. <u>See generally</u> <u>Pinto v. Massapequa</u> <u>Public Schools</u>, 820 F.Supp.2d 404, 408 (E.D.N.Y. 2011) ("While almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled.")

discrimination claims under Title VII."); Lambert v. New York State Office of Mental Health, No. 97-CV-1347, 2000 WL 574193, at *8 (E.D.N.Y. Apr. 24, 2000). Therefore, plaintiff's Title VII claims against the Department are not barred by sovereign immunity.

Nevertheless, the amended complaint fails to state a Title VII claim against the Department. Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Although plaintiff identifies his national origin as "east Indian," there are no allegations to support his claim that he suffered discrimination on this basis.[6] Dismissal of this claim is therefore appropriate.

Insofar as plaintiff alleges that his office was a "hostile work environment" in violation of Title VII, this claim must also be dismissed. "Title VII is violated '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an

---

[6] Plaintiff does allege that the Director of Audits stated that promotions were intended for "younger" employees. Am. Compl. at ¶ 25. However, "the plain language of Title VII does not prohibit discrimination on the basis of age, nor does it prohibit retaliation based on a previous age discrimination complaint." Triola v. ASRC Mgmt. Svcs. (ASRC MS), No. 10-CV-560, 2011 WL 6181731, at *4 (E.D.N.Y. Dec. 12, 2011).

environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [national origin]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citations omitted). "The Supreme Court has held that a work environment's hostility should be assessed based on the 'totality of the circumstances.'" Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Again, plaintiff has alleged no facts whatsoever so suggest discrimination on the basis of his national origin, much less an environment made "hostile or abusive" by such discrimination. For this reason, as well, Count One must be dismissed for failure to state a claim. However, as set forth below, plaintiff is granted leave to amend his complaint and replead his first cause of action.

In Count Three, plaintiff alleges that defendants retaliated against him for "asserting his rights under the anti-discrimination laws . . . ." Am. Compl. at ¶ 80. "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [sic] her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane, 508 F.3d at 115 (citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)). Plaintiff does allege that he engaged in certain protected activity (e.g., filing an EEOC charge and testifying before the New York Industrial Board of Appeals), and appears to allege employment actions that were to his disadvantage (e.g., his placement on administrative leave and reassignment to another office), but has not sufficiently pleaded facts tending to show a causal connection between the two. Although he alleges he was placed on leave "immediately" after testifying, Am. Compl. at ¶ 58, he has

11

provided no dates of these events, and the Court cannot determine whether there was a genuine temporal proximity between them.

Furthermore, since the Court cannot discern the exact basis of the Title VII retaliation claim, it is unclear whether this claim has been properly exhausted. "A Title VII claimant may file suit in federal court only if she has filed a timely complaint with EEOC and obtained a right-to-sue letter." Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994). It appears that plaintiff failed to raise the retaliation claim in his EEOC complaint. However, "[i]n an action in which these procedural requirements have been satisfied, the plaintiff may raise any claim that is 'reasonably related' to those asserted in the EEOC filing, even if that claim was not expressly addressed by EEOC." Id. "[W]hen an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is deemed 'reasonably related' to the original EEOC filing . . . . The retaliation claim may thus be heard notwithstanding plaintiff's failure to state it in a separate complaint filed with the EEOC." Owens v. New York City Housing Auth., 934 F.2d 405, 410-411 (2d Cir. 1991). Thus, if the retaliation claim arises solely from plaintiff's filing of the EEOC charge, it is more likely to be "reasonably related" to that charge. If it arises from some other protected activity, however, it is not clear whether plaintiff may pursue this claim. For these reasons, Count Three is also dismissed without prejudice and with leave to replead.

"As a general rule, when a complaint is dismissed for failure to state a claim – and particularly when the pleading is authored by an untutored pro se litigant – the court should authorize repleading if there is reason to believe that the plaintiff may be able to articulate a viable set of allegations." Santos v. General Elec. Co., No. 10 Civ. 6948, 2011 WL 5563544, at

12

*12 (S.D.N.Y. Sept. 28, 2011) (citing cases).  As it is unclear whether plaintiff may be able to articulate a viable set of allegations, Counts One and Three, insofar as they relate to the Department, are dismissed without prejudice.  Plaintiff is granted leave to file an amended complaint as further set forth below.

      2.     Claims Against the Individual Defendants in their Official Capacities

In the amended complaint, plaintiff names the individual defendants in both their official and individual capacities.  "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (quoting Monell v. New York City Dept. of Social Svcs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respect other than name, to be treated as a suit against the entity."  Id. (citing Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985)).  "It is *not* a suit against the official personally, for the real party in interest is the entity."  Id. (emphasis in original).

"To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."  Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).  Thus, insofar as plaintiff's claims against the Department are barred by the Eleventh Amendment, these claims are barred as they relate to the individual defendants in their official capacities.  Moreover, the remaining Title VII claims against the individual defendants in their official capacities are dismissed because

they are duplicative of the Title VII claims asserted against the Department directly. See Emmons v. City Univ. of New York, 715 F.Supp.2d 394, 410-11 (E.D.N.Y. 2010) (dismissing "redundant" Title VII claims).

### 3. Claims Against the Individual Defendants in their Individual Capacities

In contrast to official-capacity suits, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Graham, 473 U.S. at 165, 105 S.Ct. at 3105. The claims against the individual defendants in their individual capacities are not barred by the Eleventh Amendment. See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999) (citing Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988)). Nevertheless, these claims must be dismissed for a variety of other reasons.

#### a. Claims One (Title VII), Three (Title VII), Eleven (ADA), and Twelve (ADEA)

Title VII, the ADEA, and the ADA do not provide for individual liability. See, e.g., Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012) ("Title VII does not impose liability on individuals . . . ."); Doe v. Major Model Mgmt. Inc., No. 11 Civ. 6182, 2012 WL 763556, at *7 (S.D.N.Y. Mar. 9, 2012) ("The ADA applies to employers: it does not confer individual liability."); Guerra v. Jones, 421 Fed. Appx. 15, 17 (2d Cir. 2011) ("[N]either [Title VII nor the ADEA] subjects individuals, even those with supervisory liability over the plaintiff, to personal liability."). Accordingly, Counts One, Three, Eleven, and Twelve are dismissed as they relate to the individual defendants in their individual capacities.

14

b.     Claims Five (Equal Protection), Seven (First Amendment), and Eight (Due Process)

Plaintiff also asserts several claims pursuant to 42 U.S.C. § 1983. "Section 1983 . . . allows an action at law against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" Patterson v. County of Oneida, New York, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). "Section 1983 is not itself a source of substantive rights . . . [i]t merely provides a method for vindicating federal rights elsewhere conferred . . . ." Id. (internal quotation marks and citation omitted).

In Count Five, plaintiff claims that he was deprived of "his rights to equal employment opportunities and equal protection of the law under the Fourteenth Amendment of the United States Constitution." Am. Compl. at ¶ 88. "To state a claim of discrimination under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against [him] on the basis of [his] membership in a protected class." Rodriguez v. City of New York, 644 F.Supp.2d 168, 199 (E.D.N.Y. 2008) (citing cases). "[M]ere employment by the state does not mean that the employee's every act can properly be characterized as state action." Patterson, 375 F.3d at 230 (citing cases).

"[A]lthough . . . Title VII claims are not cognizable against individuals, individuals may be held liable under [Section] 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment . . . ." Patterson, 375 F.3d at 226. However, it is well

15

settled that, in order to state a claim against a defendant in his or her individual capacity, a plaintiff must allege that individual defendant's personal involvement in the alleged discrimination. See generally Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004). As plaintiff has not clearly alleged the personal involvement of the individual defendants in the alleged discrimination, Count Five is dismissed without prejudice and with leave to replead.[7]

In Count Seven, plaintiff alleges that defendants "retaliated against [him] . . . for engaging in protected speech on a matter of public concern." Am. Compl. at ¶ 102. "A public employee's right to freedom of speech is not absolute." Berhheim v. Litt, 79 F.3d 318, 324 (2d Cir. 1996). "However, when a public employee speaks as a citizen on a matter of public concern, that speech is entitled to First Amendment protection." Id. "The problem is to balance the employee's free speech rights with the interests of the public employer." Cioffi v. Averill Park Central School Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

"A public employee who makes a First Amendment claim of employment retaliation under § 1983 must show that: (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating

---

[7] Count Six alleges that defendants have "deprived Plaintiff of his rights to equal employment opportunities and equal protection of the law under the Constitution of the State of New York." Am. Compl. at ¶ 93. As the state equal protection claim is "analyzed under the same standard" as plaintiff's Section 1983 equal protection claim, Count Six is, for the same reasons, dismissed without prejudice and with leave to replead. See Hayut v. State University of New York, 352 F.3d 733, 754-55 (2d Cir. 2003).

factor in the adverse employment action." Id. (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)). Also, again, "a plaintiff must establish an individual defendant's personal involvement in the claimed violation to find him liable in his individual capacity under § 1983." Alvarado v. Metropolitan Transp. Auth., No. 07 Civ. 3561, 2012 WL 1132143, at *17 (S.D.N.Y. Mar. 30, 2012) (citing Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)); see also Abascal v. Jarkos, 357 Fed. Appx. 388, 391 (2d Cir. 2009) (First Amendment retaliation claim properly dismissed when plaintiff failed to plead facts showing defendant's personal involvement).

Although the amended complaint contains conclusory allegations addressing the elements of a First Amendment retaliation claim, it does not state a claim that is "plausible on its face." See Iqbal, 556 U.S. 662 at 678, 129 S.Ct. at 1949. The amended complaint does not adequately describe the speech at issue, the subsequent adverse employment decision, or the individuals involved in that decision. Count Seven is therefore dismissed without prejudice and with leave to replead as it relates to the individual defendants in their individual capacities.

In Count Eight, plaintiff claims that defendants "deprived [him] of protected liberty interests in violation of the Due Process clause of the Fourteenth Amendment." Am. Compl. at ¶ 107. In analyzing a procedural due process claim, the Court "proceeds in two steps." Narumanchi v. Board of Trustees of the Connecticut State University, 850 F.2d 70, 72 (2d Cir. 1988). "The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Id. (citing Bd. of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "*If* a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the

analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case . . . ." Id. (citing Matthews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)) (emphasis in original).

It is clear from the pleadings that plaintiff cannot state a viable due process claim. Insofar as plaintiff claims the Department's failure to promote him violated his right to due process, it is apparent that "there was not concrete expectation or 'mutually explicit understanding' that he would get the promotion." De La Cruz v. Guilliani, No. 00 Civ. 7102, 2002 WL 32830453, at *13 (S.D.N.Y. Aug. 26, 2002) (quoting Perry v. Sindermann, 408 U.S. 593, 601, 603 (1972)). To the extent this claim arises from plaintiff's assignment to particular job duties, defendants are correct that he has not alleged a protected property interest in such duties. Moreover, the documents submitted by defendants appear to clearly undermine any claim that he was deprived of due process when placed on administrative leave. Thus, Count Eight is dismissed with prejudice.

### d.     Claim Ten (Conspiracy to Deprive Plaintiff of his Civil Rights)

"Section 1985(3) clearly provides a remedy for conspiracies to deprive persons of their rights under the United States Constitution." Pabon v. New York City Transit Auth., 703 F.Supp.2d 188, 202 (E.D.N.Y. 2010) (citing cases). In order to state a claim under the statute, plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class or persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v.

Roach, 165 F.3d 137, 146 (2d Cir. 1999). "A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." Id. (internal quotation marks and citation omitted).

This claim is dismissed because plaintiff has failed to adequately allege any of the elements of a Section 1985 claim. However, plaintiff may replead this cause of action in his second amended complaint.[8]

                         e.       Claims Two (New York Human Rights Law), Four (New York Human Rights Law), Nine (Waste)

Plaintiff's second cause of action alleges discriminatory treatment on the basis of national origin and disability, in violation of New York Executive Law § 296(1)(a), as well as "aid[ing], abet[ting], incit[ing], compel[ling] or coerc[ing] a discriminatory act," in violation of New York Human Rights Law § 296(6). Amend. Compl. at ¶¶ 74-76.

The claim under Section 296(1) is dismissed without prejudice because plaintiff has not alleged facts sufficient to determine which, if any, of the individual defendants qualify as an "employer" under the statute. See Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 57 (2d Cir. 2012) ("Under [Section 296(1)], an individual is properly subject to liability for discrimination

---

   [8] Defendants argue that this claim is barred by the intracorporate conspiracy doctrine. Def. Br. at 8. "Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." Quinn v. Nassau County Police Dept., 53 F.Supp.2d 347, 359 (E.D.N.Y. 1999) (citation omitted). However, "[a]n exception to the . . . doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." Id. (quoting Bond v. Board of Education of the City of New York, No. 97 CV 1337, 1999 WL 151702, at *1 (E.D.N.Y. Mar. 17, 1999)). On the basis of the current pleadings, the Court cannot determine whether the intracorporate conspiracy doctrine would bar plaintiff's claim.

when that individual qualifies as an 'employer.'"). "An individual qualifies as an 'employer' when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.'" Id. (quoting Patrowich v. Chem. Bank, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11, 12 (1984) (per curiam)).

The claim under Section 296(6) is also dismissed without prejudice because the amended complaint does not clearly allege which, if any, of the individual defendants aided, abetted, incited, compelled or coerced a discriminatory act. The Second Circuit has held that Section 296(6) "allow[s] a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." Feingold, 366 F.3d at 158 (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)). Defendants urge the Court to follow the decisions of several state courts by ignoring this rule, arguing that defendants should not be held liable for aiding and abetting their own conduct. Def. Br. at 21-22. Although the Tomka decision is "not without controversy, . . . until the Second Circuit revisits the issue, Tomka is the law in this circuit." Maher v. Alliance Mortg. Banking Corp., 650 F.Supp.2d 249, 262 (E.D.N.Y. 2009) (quoting Tully-Boone v. North Shore–Long Island Jewish Hosp. Sys., 588 F.Supp.2d 419, 427 (E.D.N.Y. 2008)). Therefore, the Court finds that the individual defendants may be liable in their individual capacities under an aiding and abetting theory. The allegations in the amended complaint, however, fail to set forth the basis for plaintiff's Section 296(6) claim against each individual defendant. Accordingly, this claim is also dismissed without prejudice, and plaintiff is granted leave to replead.

Count Four alleges that "defendants retaliated against Plaintiff for asserting his rights

20

under the anti-discrimination laws with respect to terms, conditions and privileges of employment in violation of the New York State Human Rights Law," in violation of New York Executive Law § 296(7). Am. Compl. at ¶¶ 83-84. "[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 n. 10 (2d Cir. 2011) (citation omitted). Unlike in the Title VII context, however, "an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim." Id. (internal quotation marks and citation omitted); see also Hozer v. Pratt Indus. (USA), Inc., No. 10-cv-03874, 2012 WL 2049498, at *1 n. 1 (E.D.N.Y. June 6, 2012) ("Unlike Title VII, an individual defendant may be held liable for retaliation under the [New York Human Rights Law] . . . if he actually participates in the conduct giving rise to the plaintiff's retaliation claim."). As discussed above, however, the amended complaint omits fundamental information concerning the nature of plaintiff's retaliation claim. Accordingly, this claim is also dismissed without prejudice and with leave to replead.

Finally, plaintiff's ninth cause of action, alleging "waste," is dismissed with prejudice because the "tort of waste . . . requires an injury to real property." Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 763 (2d Cir. 1990). There is absolutely no indication from the amended complaint that plaintiff suffered an injury to real property; at most, he claims that defendants prevented him from being promoted to a more senior position.


III.    Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in

part. Defendants' motion for a more definite statement is granted to the extent that plaintiff is directed to file a second amended complaint correcting the pleading deficiencies identified herein.

As set forth supra, all claims in the amended complaint are dismissed with prejudice with the exception of the following: (1) Claims One and Three, as they relate to the Department; (2) Claims Two, Four, Five, Six, Seven, and Ten, as they relate to the individual defendants in their individual capacities.

Plaintiff is granted leave to file a second amended complaint with respect to the remaining claims **no later than July 20, 2012 at five o'clock in the afternoon (5:00 p.m.).** The second amended complaint must contain significantly more factual detail concerning each of the remaining claims, including the actual or approximate dates of all events at issue, and shall include the specific allegations underlying plaintiff's claims against each individual defendant.

If plaintiff chooses to file a second amended complaint, it shall be labeled "Second Amended Complaint" and shall be served upon defendants in accordance with the Federal Rules of Civil Procedure. If plaintiff fails to file a second amended complaint in a timely manner, this case will be closed.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated:       June 18, 2012
             Central Islip, New York